**ARMES et al. v. UNITED STATES.**

No. 5388.

Circuit Court of Appeals, Seventh Circuit.

May 3, 1935.

Rehearing Denied June 8, 1935.

164

Harold J. Bandy, of Granite City, Ill., for appellants.

Frank K. Lemon, U. S. Atty., and James P. Dillie, Asst. U. S. Atty., both of Springfield, Ill.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellants were convicted by a jury and each sentenced to ten years' imprisonment (the extreme penalty) for violation of section 121, title 18, U. S. C. (18 USCA § 121),[1] in assaulting, resisting, etc., an officer of the United States in the discharge of his duties prescribed by the revenue laws of the United States. The six counts of the indictment whereof they were convicted charged in varying language the offense denounced by the statute—three of them charging that appellants used deadly weapons in making the assault and resistance.

Appellants' attack on the judgments is predicated upon the contention that they are not sustained by any substantial evidence appearing in the record, in that the record wholly fails to show that appellants knew, or had reason to believe, that at the time of the assault, resistance, etc., the officer or officers alleged to have been assaulted and resisted were in fact such officers.

While attention is directed to the weakness of the evidence in other respects, it is frankly and properly stated that in these matters the court "will not usurp the province of the jury to weigh conflicting testimony," and that "the unconvincing quality of the proof of these averments cannot properly be urged as a ground for reversal."

Recurring then to the specific ground of error relied upon, it may be said that while the statute, unlike some other statutes, does not in terms prescribe willfulness or knowledge as an element of the crime, the counts of the indictment do allege that the accused knew that the persons assaulted, resisted, etc., were officers of the United States as charged, and the Government concedes that the scienter was necessary to be alleged and proved. We therefore consider the contention that the evidence entirely fails to show such knowledge of appellants.

The evidence tended to show that the officers were at the time engaged in making a search and seizure of an outfit for making whisky, located in a barn upon a certain farm. They had followed a suspicious looking automobile to the farm and found the still in operation there, in charge of and operated by three men, one of whom they arrested and handcuffed, the other two escaping. They took possession of the plant, as well as of two automobiles there present.

About 2:30 p. m. an automobile containing five men drove along a lane on the farm

---

1 "Whoever shall forcibly assault, resist, oppose, prevent, impede, or interfere with any officer of the customs or of the internal revenue, or his deputy, or any person assisting him in the execution of his duties, or any person authorized to make searches and seizures, in the execution of his duty, or shall rescue, attempt to rescue, or cause to be rescued, any property which has been seized by any person so authorized; or whoever before, at, or after such seizure, in order to prevent the seizure or securing of any goods, wares, or merchandise by any person so authorized, shall stave, break, throw overboard, destroy, or remove the same, shall be fined not more than $2,000 or imprisoned not more than one year, or both; and whoever shall use any deadly or dangerous weapon in resisting any person authorized to make searches or seizures, in the execution of his duty, with intent to commit a bodily injury upon him or to deter or prevent him from discharging his duty, shall be imprisoned not more than ten years."

leading to the barn. It was testified that one of the officers walked out into the lane and toward them, and holding up his hand commanded them to stop, declaring that he was a Government officer; that thereupon the men in the car placed handkerchiefs over their faces, and drawing guns and pistols upon the officer commanded him to throw up his hands, which he did, and they started marching him back toward the barn. The officer testified that appellants beat him with their weapons, knocking him down and bruising him. It was testified that they fired several shots, some of which evidently struck the officers' nearby automobile (perhaps with the purpose of disabling it); also that appellants dropped their masks and the officer identified them as the persons who beat him; and that while this was going on the handcuffed man escaped. The other officers who were there went to call assistance. The five men then withdrew, taking with them one of the automobiles which the officers had seized, and appellants were apprehended a few days thereafter.

The officer who was assaulted testified that on a previous occasion he had seen appellant Armes in another jail where he was then confined, and conversed with him about an hour.

It seems to us that the very situation would have tended to raise in the minds of these men a reasonable ground to believe that the person or persons then purporting to be Government officers were in fact such, and were engaged in the line of their duty.

Respecting the testimony that the officer commanded them to halt, saying he was a Government officer, it is contended it does not appear that he spoke loud enough to be heard by appellants. If the jury believed that he ordered them to halt, and said he was a Government officer, as was testified, it is only reasonable to believe that the words were spoken with the intent that they should be heard; and if they were spoken for this purpose, there is every likelihood they were spoken loud enough so these men could hear them. It does not appear that upon this September afternoon, on this lane

where the officer was facing these men not far distant from him, there was anything which would have obstructed or diverted his voice. The jury heard the officer testify, and doubtless had an adequate idea as to the carrying qualities of his voice. That he would and did talk loud enough to be heard is a reasonable inference to be drawn from the situation, even though it was not testified what was then the pitch or volume of his voice.

For appellants there is stressed a statement in the officer's testimony to the effect that just before starting away Armes said to his companions, "We had better get out of here before the law comes," a statement which it is claimed is not reconcilable with their knowledge that this man was in fact a federal officer. Assuming the correctness of the report of this statement, it may not be readily apparent what is meant by it. Perhaps it signified fear of reinforcement of this then helpless officer. But this was just another fact for the jury to consider in determining whether or not appellants knew or had reason to believe this man was a federal officer.

While predicating no error upon the contended severity of the sentence, it is nevertheless pointed out that under the evidence the infliction of the extreme statutory penalty of ten years' imprisonment is quite anomalous. The Government's evidence indicated that these men had this officer in their complete power. They were back on a farm near a still which had been seized. That appellants contemplated no serious injury to the officer, although they possessed divers and sundry deadly weapons, abundantly appears from the fact that they did him no harm beyond inflicting a few superficial bruises. However we might be disposed to agree with counsel's strictures upon the severity of the penalty, we are sure counsel is in entire accord when we say this court has no power to afford relief in this regard, such function having been committed to the executive and not to the judicial branch of the Government.

Upon this record we would not be justified in disturbing the judgment, which is accordingly affirmed.